**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **DELISHA HOWELL,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.:** |
| *v.* | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **JOE MACHENS AUTOMOTIVE** | ) | |
| **GROUP, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

COMES NOW, Plaintiff Delisha Howell, by and through her undersigned counsel, and states and alleges as follows:

## INTRODUCTION

1.     This is a case of a prolonged "yo-yo" scheme implemented against Plaintiff, replete with violations of the Equal Credit Opportunity Act and Truth in Lending Act. It also involves an extended, illegal repossession of Plaintiff's vehicle; an illegal transfer of Plaintiff's vehicle; apparent odometer rollback; and late title delivery. This case, then, is about auto dealerships acting with brazen disregard for multiple laws while taking advantage of Plaintiff over the course of eight months.

## PARTIES

2.     Plaintiff Delisha Howell ("Howell") is an individual resident of Missouri.

3.     Defendant Joe Machens Automotive Group, Inc. d/b/a Joe Machens Chrysler Dodge Jeep Ram ("JMAG") is a Missouri corporation with its principal place of business in Columbia, MO. As of July 18, 2022, JMAG had the following registered agent

1

listed with the Missouri Secretary of State: Grant R. Drewing, 1710 Interstate 70 Dr. SW, Columbia, MO 65203-1031.

4.     On June 11, 2022, JMAG received a notice of representation and preservation demand from Plaintiff's counsel, via certified mail, addressed to the registered agent JMAG had, and has, listed with the Missouri Secretary of State. An apparent employee of JMAG—Lori Clay, office manager at Joe Machens BMW—stated that the dealership had received the letter but, apparently, hadn't updated its registered agent with the Secretary of State since being sold approximately seven years ago. Ms. Clay stated that she would "shred" the notice-preservation letter. Because any fault as to improper agent was the fault of JMAG, not Plaintiff, and because a JMAG manager acknowledged receiving the letter, any failure by JMAG to preserve documents and communications as described in that letter should be considered willful. As stated, JMAG had the same registered agent (Grant R. Drewing) listed with the Secretary of State as of July 18, 2022.

## JURISDICTION AND VENUE

5.     Subject-matter jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331 because it's an action under the federal Equal Credit Opportunity Act (the "ECOA"), 15 U.S.C. § 1691 *et seq.*

6.     Subject-matter jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331 because it's an action under the federal Truth in Lending Act (the "TILA"), 15 U.S.C. § 1601 *et seq.*

7.     This Court has personal jurisdiction over Defendant it's a Missouri business

and conducts business throughout this District.

8.  Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to the claims contained herein occurred in this District.

## FACTS COMMON TO ALL COUNTS

## PLAINTIFF PURCHASES A VEHICLE FROM JMAG

9.  On or about August 12, 2021, Plaintiff executed a retail installment contract ("RISC #1") for the purchase of the 2017 Dodge Journey with VIN 3C4PDCGG4HT518246 (the "Journey").

10. RISC #1 named JMAG the "seller-creditor."

11. The TILA disclosures in RISC #1 stated an APR of 20.75%; finance charge of $15,023.32; amount financed of $19,505; total of payments of $34,528.32; down payment of $500; and total sale price of $35,028.32.

12. The amortization schedule as to RISC #1 entailed seventy-two monthly payments of $479.56, beginning on September 25, 2021.

13. The *actual* APR resulting in that monthly payment on an amount financed of $19,505 is 21.085%. Thus, the difference between the APR disclosed by JMAG and the actual APR was .335%, which is 2.68 times the TILA's allowable deviation of .125%.

14. The odometer reading on RISC #1 stated 56,718 miles.

15. RISC #1 entailed a valid contract between JMAG and Plaintiff.

16. Plaintiff purchased the Journey.

17. The retail buyers order generated along with RISC #1 named Bryan Key the

3

salesperson.

## JMAG WRONGFULLY REPOSSESSES THE VEHICLE

18.     Approximately a month and a half after she'd properly purchased the Journey, and after she'd received the title paperwork for the vehicle, Plaintiff received a call from JMAG.

19.     JMAG informed Plaintiff that her "loan"— presumably, the assignment of RISC #1 to an external creditor—had fallen through.

20.     Despite this, Plaintiff did not receive an ECOA-compliant adverse-action notice from JMAG.

21.     Plaintiff was informed that, generally, an external creditor—Avid Acceptance, LLC—was blaming JMAG for having not sent paperwork. JMAG relayed to Plaintiff something akin to, "[Avid Acceptance, LLC] says the numbers aren't matching up."

22.     Not much later, and without having clarified the situation, JMAG sent agents to Kansas City to simply take the Journey back.

23.     That is, JMAG wrongfully repossessed—in fact, just stole—the Journey from Plaintiff.

24.     Plaintiff didn't receive a notice of default or right-to-cure letter in advance of JMAG's wrongful repossession of the Journey.

## JMAG HOLDS PLAINTIFF'S VEHICLE RANSOM
## AND ALSO TRANSFERS ITS TITLE

25.     Having stolen Plaintiff's vehicle while refusing to honor RISC #1 despite being the "seller-creditor," JMAG then proceeded to offer Plaintiff the Journey back

4

under new terms.

26.     Sometime after the illegal repossession of the Journey, an apparent agent of JMAG called Plaintiff at home and informed her that the "deal"—i.e., repurchasing her stolen car under less favorable terms—could be done with a $3,000 down payment.

27.     On October 30, 2021, Plaintiff entered into another retail installment contract ("RISC #2") for the Journey, which already belonged to her.

28.     Interestingly, the "creditor-seller" on RISC #2 was McLarty CMDCJ, LLC, not JMAG. Thus, JMAG had apparently sold, or otherwise transferred, title to Plaintiff's car to another entity after illegally repossessing it.

29.     Plaintiff put another $2,750 as a "down payment" on her own vehicle.

30.     The TILA disclosures made by McLarty in RISC #2 entailed a 22.99% APR; finance charge of $14,910.56; amount financed of $19,354; total of payments of $34,264.56; down payment of $2,970; and total sale price of $37,234.56. That down payment amount was incorrect.

31.     The odometer reading on RISC #2 stated 56,719 miles.

32.     That is, RISC #2 averred a mileage reading that was *just one mile higher* than on RISC #1, even though Plaintiff had had the Journey for approximately a month and a half before it was repossessed.

33.     Thus, McLarty, which had no right of ownership over the Journey, resold the vehicle to Plaintiff at a higher total price than she'd paid for it while also seemingly rolling the odometer back.

34.     The amortization schedule as to RISC #2 entailed sixty-six monthly

payments of $519.16, beginning on November 30, 2021.

35.    Thus, JMAG's illegal conduct in this regard also resulted in a monthly payment that was approximately $40 higher than before.

36.    Despite the materially worse terms attached to RISC #2, Plaintiff did not receive an ECOA-compliant adverse-action notice from JMAG (or McLarty CMDCJ, LLC).

37.    The retail buyers order generated along with RISC #2 named Bryan Key the salesperson.

**DEFENDANT CONTINUES TO MANIPULATE PLAINTIFF**

38.    Even then, JMAG wasn't finished with Plaintiff.

39.    Plaintiff proceeded to make monthly payments on the Journey in the (improper) amount of $519.16.

40.    Plaintiff didn't receive the new titling paperwork for the Journey until January 2022. While she already, as stated, had properly purchased the Journey per RISC #1, this late delivery of title (further) rendered RISC #2 fraudulent and void.

41.    The new titling paperwork stated that the Journey's mileage was 56,718.

42.    On March 14, 2022, Plaintiff paid $1,866.80 to the Missouri Department of Revenue for, respectively, Jackson County tax ($915.75); agent fee ($6); titling fee ($8.50); title penalty ($100); and state tax ($836.55).

43.    That same day, Plaintiff paid $1,000 and a $21.50 transaction fee to the Kansas City DMV.

44.    Nonetheless, despite all this—i.e., having her vehicle wrongfully

repossessed, improperly transferred between entities, and held for ransom in exchange for less favorable terms, and then receiving an unlawfully late title and making payments to properly register the Journey—Plaintiff received, in March 2022, a letter from RISC #2's assignee, Credit Acceptance Corp., which informed Plaintiff that it had closed her account and ceased reporting it to the CRAs.

45. Plaintiff who had, again, properly purchased the Journey seven months before and entered RISC #2 five months before, was confused and distraught as she'd been making timely monthly payments and didn't understand why there was another contractual issue.

46. Plaintiff made multiple calls to JMAG and the dealership's agents avoided her for some time. However, salesperson Bryan Key eventually took her call and said he'd investigate the purported reassignment of RISC #2.

47. Plaintiff called Credit Acceptance Corp. in this same regard and was told that the loan was reassigned because the paperwork sent it by the dealership had listed Avid Acceptance, LLC, as the lienholder.

48. JMAG proceeded to run Plaintiff's credit multiple times in March and/or April 2022. These were presumably hard credit pulls.

49. On April 27, 2022, Plaintiff entered another retail installment contract ("RISC #3") for the repurchase of her own vehicle.

50. The "creditor-seller" on RISC #3 was again McLarty CMDCJ, LLC.

51. The TILA disclosures made by McLarty in RISC #3 entailed a 22.99% APR; finance charge of $13,051.52; amount financed of $16,941.52; total of payments of

$29,993.04; down payment of $5,051.48; and total sale price of $35,044.52.

52.     The amortization schedule as to RISC #3 entailed sixty-six monthly payments of $454.44, beginning on May 27, 2022.

53.     The odometer reading on RISC #3 stated 60,538 miles.

54.     RISC #3 stated that it was assigned to Credit Acceptance Corp.

55.     Again, Plaintiff had been making monthly payments on her vehicle. Per RISC #2, those $519.16-monthly payments were to begin on November 30, 2021.

56.     So, by the time JMAG had yo-yo'd Plaintiff in again during the spring of 2022, she'd made four payments on the Journey for a total of $2,076.64.

57.     Previously, as stated, Plaintiff had made a total of $3,250 in cash down payments towards the Journey.

58.     It's not readily apparent where the $5,051.48 down payment figure listed in RISC #3 came from. It's notably close, however, to the sum ($5,046.64) obtained by adding the down-payment amount on RISC #2 with the four monthly payments made by Plaintiff.

59.     The total sale price listed on RISC #3 — $35,044.52 — was remarkably close to (and actually somewhat higher than) that listed on RISC #1 ($35,028.32) even though eight months and some thousands of miles had been put on the Journey's odometer. This aside from the undue hassle the dealership had put Plaintiff through.

60.     Despite another overcharge — i.e., terms that were materially worse — via another contract generated relative to the vehicle she'd rightfully purchased *eight months* before, Plaintiff did not receive an ECOA-compliant adverse-action notice from JMAG.

61.     Plaintiff, as described, suffered monetary damages in the form of, at the least, a less favorable APR and increased vehicle pricing because of Defendant's actions.

62.     Plaintiff also suffered wasted time and undue transportation costs to Columbia because of Defendant's actions.

63.     Plaintiff suffered excessive hard credit pulls because of Defendant's actions.

64.     Plaintiff suffered the loss of use of the Journey when JMAG wrongfully repossessed and converted the vehicle.

65.     Plaintiff suffered substantial emotional distress because of Defendant's actions.

66.     Plaintiff was compelled to seek legal counsel because of JMAG's actions.

67.     Plaintiff has continued to make payments on the Journey.

68.     JMAG's actions in this regard, including implementing "yo-yo" schemes and failing to supply buyers with ECOA-compliant adverse-action notices despite being listed as the "seller-creditor" on loan agreements and instituting adverse actions, are part of a pattern and practice.

## COUNT ONE:
## VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT,
## 15 U.S.C. § 1691 *et seq.*

69.     Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

70.     Plaintiff and JMAG are each a "person" for the purposes of the ECOA. *See* 15 U.S.C. § 1691a(f).

71.     JMAG is a "creditor" for the purposes of the ECOA because it "regularly

extends, renews, or continues credit" and/or "regularly arranges for the extension, renewal, or continuation of credit." *See* 15 U.S.C. § 1691a(e).

72.    As described, JMAG was named the "seller-creditor" on RISC #1.

73.    Plaintiff was an "applicant" for "credit" for the purposes of the ECOA. *See* 15 U.S.C. § 1691a(b), (d).

74.    Plaintiff had JMAG take an "adverse action" against her, as described above. *See* 15 U.S.C. § 1691(d)(6).

75.    Plaintiff did not receive from JMAG an ECOA-compliant notice as to that "adverse action," as described above. *See* 15 U.S.C. § 1691(d)(1)-(2).

76.    JMAG deprived Plaintiff of the benefit of her bargain, as enshrined in RISC #1, into which she entered with JMAG.

77.    Plaintiff has suffered actual damages because of JMAG's violations of the ECOA. *See* 15 U.S.C. § 1691e(a).

78.    More specifically, Plaintiff suffered actual damages, at the least, in the form of increased cost of subsequent financing, loss of vehicular use, and higher total price (after JMAG had illegally transferred the Journey to McLarty).

79.    JMAG "shall" be liable to Plaintiff for actual damages and punitive damages. *See* 15 U.S.C. § 1691e(b).

80.    Should Plaintiff be successful in this action, JMAG "shall" be liable for her reasonable attorneys' fees and litigation costs. *See* 15 U.S.C. § 1691e(d).

81.    Plaintiff hereby prays for judgment against JMAG in such amount as is allowable by law and to be determined at trial, for actual damages, pre- and post-

judgment interest at the greatest rate allowed by statute, punitive damages, and for such other and further relief as may be just and proper under the circumstances.

## COUNT TWO:
## VIOLATIONS OF THE TRUTH IN LENDING ACT
## 15 U.S.C. § 1601 *et seq.*

82.    Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

83.    JMAG is a "creditor" as defined by the TILA because it regularly extends credit via installment contracts and is the person to whom Plaintiff's debt was payable from the face of RISC #1. *See* 15 U.S.C. § 1602(g).

84.    Plaintiff is and was a "consumer" during all germane periods. *See* 15 U.S.C. § 1602(i).

85.    Per RISC #1, JMAG extended "credit" to Plaintiff. *See* 15 U.S.C. § 1602(f).

86.    JMAG's sale of the Journey to Plaintiff was a "credit sale." *See* 15 U.S.C. § 1602(h).

87.    Plaintiff's purchase of the subject vehicle was primarily for personal, household, and/or family purposes.

88.    Per RISC #1, the "amount financed" was $ 19,505.

89.    Per RISC #1, the "annual percentage rate" was 20.75%.

90.    Per RISC #1, the "total of payments" was $34,528.32.

91.    Per RISC #1, the "finance charge" was $15,023.32.

92.    Per RISC #1, the cash down payment was $500.

93.    Per RISC #1, the "total sale price" was thereby $35,028.32.

11

94.     RISC #1's "finance charge" was materially incorrect, in violation of 15 U.S.C. § 1638(a)(3), and Regulation Z, 12 C.F.R. §§ 226.18(d), 226.4.

95.     RISC #1's "annual percentage rate" was materially incorrect, in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z, 12 C.F.R. § 226.18(e).

96.     RISC #1's "amount financed" was materially incorrect, in violation of 15 U.S.C. § 1638(a)(2A) and Regulation Z, 12 C.F.R. § 226.18(b).

97.     JMAG further violated the TILA because it treated the disclosures on RISC #1 as estimates about the terms of the credit that it might provide Plaintiff and, pursuant to Regulation Z, 12 C.F.R. § 226.17(c)(2), the disclosures should have been marked as estimates.

98.     As described above, Plaintiff made, per RISC #1, a $500 down payment but JMAG, after entering RISC #1, began to demand $3,000, which had no contractual basis.

99.     As described above, JMAG entered RISC #1 with Plaintiff but did not provide financing on those terms.

100.    Pursuant to 15 U.S.C. § 1640(a), Plaintiff is entitled to recover actual and statutory damages because of JMAG's TILA violations.

101.    In the case of successful enforcement of such TILA liability, Plaintiff is, per 15 U.S.C. § 1640(a)(3), also entitled to her reasonable attorney's fees and expenses in litigating this action.

102.    Plaintiff hereby prays for judgment against JMAG for her actual damages, pre- and post-judgment interest in the greatest amount allowable by statute, reasonable attorneys' fees, statutory penalties, costs in bringing this action, and such other and

further relief the Court finds just and proper under the circumstances.

**COUNT THREE:**
**WRONGFUL REPOSSESSION**

103. Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

104. Plaintiff did not default on RISC #1.

105. Again, JMAG was named the "seller-creditor" on the face of RISC #1.

106. Pursuant to R.S.Mo. § 408.554(1), a payment must be in default for ten days before "a lender may" provide a borrower with the aforementioned right-to-cure notice.

107. Pursuant to R.S.Mo. § 408.555.1, "a lender" cannot legally take possession of a vehicle, where the only basis of default is failure to make a payment, without sending the borrower a right-to-cure notice.

108. Pursuant to R.S.Mo. § 408.555.1, "a lender" cannot legally take possession of a vehicle, where the only basis of default is failure to make a payment, without sending the borrower a right-to-cure notice.

109. Pursuant to R.S.Mo. § 408.555.1, "a lender" cannot legally take possession of a vehicle, where the only basis of default is failure to make a payment, until twenty days after the right-to-cure notice was given to the borrower.

110. Not only did Plaintiff not default at all such that JMAG had no legal basis upon which to seize the Journey, but she also didn't receive a right-to-cure notice or the required twenty-day grace period.

111. JMAG knew, or had every reason to know, that she hadn't received such a notice.

13

112. Plaintiff suffered the loss of use of the Journey and emotional distress because of the Journey's illegal repossession.

113. Pursuant to R.S.Mo. § 408.562, Plaintiff is entitled to recover actual damages for these violations and the Court may award her reasonable attorneys' fees.

114. JMAG's conduct, as outlined herein, was intentional, willful, wanton, malicious, fraudulent, and/or with reckless disregard for the rights of Plaintiff.

115. Plaintiff hereby prays for judgment against JMAG in such amount as is allowable by law and to be determined at trial, for her actual damages, pre- and post-judgment interest at the greatest rate allowed by statute, reasonable attorneys' fees, and such other and further relief as may be just and proper under the circumstances.

## COUNT FOUR:
## ABUSE OF PROCESS

116. Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

117. As described herein, JMAG deployed the process of self-help repossession in an illegal, improper, and perverted manner.

118. It did this for an improper purpose: baselessly seizing Plaintiff's vehicle.

119. As described herein, Plaintiff suffered damages because of Defendant's abuse of process, including but not limited to the deprivation of use of the Journey.

120. JMAG's conduct as described herein was intentional, willful, wanton, malicious, fraudulent, and/or with reckless disregard to Plaintiff's rights.

121. Plaintiff hereby prays for judgment against JMAG in such amount as is allowable by law and to be determined at trial, for her actual damages, pre- and post-

judgment interest at the greatest rate allowed by statute, and such other and further relief as may be just and proper under the circumstances.

## COUNT FIVE:
## <u>CONVERSION</u>

122.     Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

123.     As described, Plaintiff purchased the Journey via a down payment and credit sale when she entered into RISC #1 with JMAG.

124.     Plaintiff was the rightful owner of the Journey when JMAG seized it and took it from her home.

125.     Plaintiff was also the rightful owner of the Journey when, as described, JMAG apparently transferred "ownership" of the vehicle to McLarty CMDCJ, LLC, which sold it back to Plaintiff at less favorable terms.

126.     JMAG took the Journey without authorization, right of ownership, or right of possession.

127.     Defendant seized possession of the Journey with the intent to exercise control over it and in fact did so, to the exclusion of Plaintiff's rights of ownership and possession.

128.      As such, JMAG deprived Plaintiff of the possession, control, and use of the Journey.

129.     Defendant refused to yield possession of the Journey upon Plaintiff's demand.

130.     As a result of JMAG's conversion of the Journey, Plaintiff suffered damages,

including but not limited to loss of use of the vehicle, wasted time, transportation costs to Columbia, and emotional distress.

131.    Defendant's conduct, as outlined herein, was intentional, willful, wanton, malicious, fraudulent, and/or with reckless disregard to Plaintiff's rights.

132.    Plaintiff hereby prays for judgment against JMAG in such amount as is allowable by law and to be determined at trial, for her actual damages, pre- and post-judgment interest at the greatest rate allowed by statute, litigation costs, and such other and further relief as may be just and proper under the circumstances.

## COUNT SIX:
## NEGLIGENCE

133.    Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

134.    As described, after purchasing the Journey under the terms listed in RISC #1, JMAG participated in the unlawful repossession of the Journey after informing Plaintiff that the assignment of RISC #1 had fallen through and whatever numbers weren't "matching up."

135.    However, Avid Acceptance, LLC, informed Plaintiff that JMAG hadn't sent some paperwork.

136.    Then, substantially later, Credit Acceptance Corp. informed Plaintiff that it had reassigned RISC #2 because Avid Acceptance, LLC, was listed as the Journey's lienholder on the relevant paperwork.

137.    JMAG owed Plaintiff, as a credit applicant and customer, a duty of reasonable care.

16

138.    JMAG breached its duty of care to Plaintiff by mismanaging and/or manipulating paperwork and/or misrepresenting financing terms and/or status.

139.    As a direct and proximate result of those breaches Plaintiff, as described, was compelled (unlawfully) to go through several sets of purchasing paperwork over the course of approximately eight months, drive back and forth unduly to Columbia, and have her credit excessively hard-pulled.

140.    Plaintiff hereby prays for judgment against JMAG in such amount as is allowable by law and to be determined at trial, for her actual damages, pre- and post-judgment interest at the greatest rate allowed by statute, litigation costs, and such other and further relief as may be just and proper under the circumstances.

**COUNT SEVEN:**
**ODOMETER FRAUD**

141.    Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

142.    As stated, the Journey's odometer reading, per RISC #1, was 56,718 miles. RISC #1 was dated August 12, 2021.

143.    As stated, the Journey's odometer reading, per RISC #2, was 56,719 miles. RISC #2 was dated October 30, 2021.

144.    Given that Plaintiff, upon purchasing the Journey in August, drove it back to Kansas City from Columbia and then proceeded to drive it until it was wrongfully repossessed, the vehicle obviously incurred more than a single mile between RISC #1 and RISC #2.

145.    As stated, apparent agents of JMAG unlawfully repossessed the Journey

from Plaintiff.

146.     JMAG knew, or should have known, of the odometer tampering.

147.     Plaintiff suffered actual damages because of Defendant's odometer fraud as she overpaid, in both RISC #2 and RISC #3, for the vehicle relative to its actual mileage.

148.     Pursuant to R.S.Mo. § 407.546, JMAG is liable to Plaintiff for the greater of three times the actual damages sustained or $2,500, along with reasonable attorneys' fees.

149.     Plaintiff hereby prays for judgment against JMAG in such amount as is allowable by law and to be determined at trial, for the greater of three-times actual damages or $2,500, pre- and post-judgment interest at the greatest rate allowed by statute, litigation costs and attorneys' fees, and such other and further relief as may be just and proper under the circumstances.

## COUNT EIGHT:
## VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT,
## R.S. Mo. § 407.010 *et seq.*

150.     Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

151.     The Missouri Merchandising Practices Act, R.S. Mo. § 407.010 *et seq.* ("MMPA") prohibits unfair and deceptive acts and practices in the sale of goods and services in Missouri.

152.     The sale of the Journey was a "sale" of "merchandise" as defined by the MMPA.

153.     The sale of the Journey occurred within "trade" and "commerce" within the state of Missouri.

154. Plaintiff, as described, purchased the Journey.

155. Plaintiff's purchase of the Journey was primarily for personal, family, or household purposes.

156. Defendant JMAG, as described throughout, engaged, as to Plaintiff and the Journey, in conduct that was deceptive, fraudulent, built upon false pretenses, built upon false promises, that utilized misrepresentations, and/or that was unfair.

157. Defendant JMAG, as described throughout, has also concealed, suppressed, and/or omitted material facts from Plaintiff with regard to the Journey.

158. Plaintiff has suffered an ascertainable monetary loss as a result of JMAG's unlawful conduct, as described herein.

159. Pursuant to 15 C.S.R. § 60-8.020, **Unfair Practice in General**, an "Unfair Practice is any practice which – (A) either (1) offends any public policy as it has been established by the . . . statutes or common law of this state or (2) is unethical, oppressive or unscrupulous; and (B) represents a risk of, or causes, substantial injury to consumers."

160. Pursuant to 15 C.S.R. § 60-8.090, **Illegal Conduct**, "(1) it is an unfair practice for any person in connection with advertisement or sale of merchandise to engage in any method, use or practice which – (A) violates state or federal law intended to protect the public; and (B) presents a risk of, or causes, substantial injury to consumers."

161. Pursuant to 15 C.S.R. § 60-9.040, **Fraud in General**, "(1) Fraud includes any acts, omissions or artifices which involve falsehood, deception, trickery, breach of legal or equitable duty, trust, or confidence, and are injurious to another or by which an undue or unconscientious advantage over another is obtained."

19

162. Pursuant to 15 C.S.R. § 60-8.040 **Duty of Good Faith**, "(1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to violate the duty of good faith in solicitation, negotiation and performance, or in any manner fail to act in good faith.

163. JMAG's violations of the MMPA include, but are not limited to, the following:

  i.    Violating the TILA by materially misstating terms on RISC #1;
  ii.   Violating the TILA by failing to mark the relevant terms as estimates;
  iii.  Violating the ECOA by neglecting to send ECOA-compliant adverse-action notices;
  iv.   Demanding an unjustified, enhanced down payment for the Journey after Plaintiff had purchased it;
  v.    Wrongfully repossessing the Journey;
  vi.   Converting the Journey;
  vii.  Transferring the Journey to McLarty CMDCJ, LLC, despite having no ownership right in the vehicle; and
  viii. Rolling back the Journey's odometer.

164. Plaintiff, as to JMAG and the Journey, acted as a reasonable consumer in light of all relevant circumstances.

165. JMAG's violations of R.S. Mo. § 407.020, described above, would cause a reasonable person to enter into the transaction resulting in damages—i.e., Plaintiff's purchase , and repurchase(s), of the Journey.

166. JMAG's unlawful conduct, as described herein, was in violation of statutes with public-interest impact. JMAG's violations are part of a pattern and practice and also have the potential for repetition.

167. JMAG's conduct as outlined herein was intentional, willful, wanton, fraudulent, reckless, and/or malicious.

168.     As a direct and proximate result of JMAG's conduct, described herein, Plaintiff has suffered ascertainable damages that can be calculated with a reasonable degree of certainty via definitive and/or objective evidence.

169.     Plaintiff has suffered substantial emotional distress because of JMAG's unlawful conduct.

170.     Pursuant to R.S. Mo. § 407.025.1, Plaintiff is entitled to recovery of her actual damages.

171.     Plaintiff hereby prays for judgment against JMAG in such amount as is allowable by law and to be determined at trial, for her actual damages, pre and post-judgment interest at the greatest rate allowed by statute, reasonable attorneys' fees, and such other and further relief as may be just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

172.     Plaintiff hereby demands a trial by jury on all issue so triable.

Respectfully submitted,

/s/ Bryce B. Bell
Bryce B. Bell           MO#66841
Mark W. Schmitz      MO#69329
Andrew Taylor          MO#72157
Jenilee V. Zentrich   MO#72781
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
T: 816-886-8206
F: 816-817-8500

Bryce@BellLawKC.com
MS@BellLawKC.com
AT@BellLawKC.com
JZ@BellLawKC.com
*Attorneys for Plaintiff*